Dennis J. RICHINS and Suesann
Richins, Plaintiffs and
Appellees,

v.

DELBERT CHIPMAN & SONS CO., INC.;
and D. Ray Chipman, individually, Defendants and Appellants,

and

Richard Porter; Kenneth Porter;
and John Does 1 through 10,
Defendants and Appellees.

No. 900134–CA.

Court of Appeals of Utah.

Aug. 14, 1991.

Ralph J. Marsh (argued), Backman, Clark & Marsh, Salt Lake City, for defendants and appellants.

James R. Brown (argued), Jardine, Linebaugh, Brown & Dunn, Salt Lake City, for plaintiffs and appellees.

George A. Hunt (argued), Williams & Hunt, Salt Lake City, for Porter.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

GARFF, Judge:

This is an appeal from an order dismissing a motion for relief from judgment. Appellant challenges the trial court's finding that he entered into a valid stipulation, which the court approved. Appellant also challenges the court's conclusion that it lacked jurisdiction over his motion to set aside because it was untimely filed under Utah R.Civ.P. 60(b)(1). We affirm.

On October 30, 1986, appellants Delbert Chipman & Sons Co., and D. Ray Chipman (collectively Chipman) sold and leased grazing permits to appellees, Dennis and Suesann Richins (collectively Richins). Some six months later, on April 27, 1987, Chipman sold and leased parts of the same grazing permits to coappellees, Richard and Kenneth Porter (collectively Porter). On May 6, 1987, Richins filed suit against Chipman and Porter to settle the dispute over who rightfully possessed the grazing rights.

At the bench trial, held December 21, 1987, Richins presented his case in chief, after which the court recessed for lunch. When the court reconvened, the parties announced that they had reached a settlement agreement. With Chipman and his confidant Dr. Osguthorpe present, the stipulation for settlement and judgment was read into the record. The following exchange then ensued:

MR. WOOTON [Counsel for Chipman]: Mr. Chipman you have been in court and listened to that stipulation have you not sir?

MR. CHIPMAN: What stipulation.

MR. WOOTON: The one Mr. Brown just stated into the record?

MR. CHIPMAN: Well I don't understand it.

MR. WOOTON: Well have you been in here and you understand it?

MR. CHIPMAN: I have been in here a long time and I don't quite understand it but I guess it is all right.

MR. WOOTON: All right Mr. Os[gu]thorpe you are Mr. Chipman's friend?

MR. OSGUTHORPE: Yes.

MR. WOOTON: You have been in the courtroom and heard it too?

MR. OSGUTHORPE: Yes.

MR. WOOTON: And do you think it is reasonable?

MR. OSGUTHORPE: Yes.

The parties' attorneys reduced the stipulation to writing, signed it, and the court entered an order enforcing the terms of the stipulation. Subsequently, substantial sums of money were distributed to Chipman and to Porter under the terms of the stipulation, and the parties otherwise performed pursuant to its terms for over a year. Indeed, in subsequent correspondence, Chipman specifically invoked portions of the stipulation.

On March 9, 1989, Chipman filed a series of motions styled "Motions to Enforce Termination of Lease Pursuant to Stipulation in Court or, in the Alternative, to Set Aside or to Reform Stipulation, Stipulation for Settlement and Judgment, and Judgment."

Richins moved to dismiss Chipman's motions.

The court found that Chipman had entered into a valid stipulation upon which the previous judgment rested.[1] The court then ruled that Chipman's motions to set aside or to reform the stipulation for settlement and judgment constituted a motion for relief from judgment under Utah R.Civ.P. 60(b)(1). The court concluded that it lacked jurisdiction to consider the motion because it was not filed until long after the three month period prescribed by Rule 60(b)(1). Finally, the court declined to consider the motion to enforce termination of the lease, ruling that such relief could only be obtained collaterally by filing a separate complaint.

Chipman appeals, arguing that he neither understood nor consented to the stipulation and that therefore he was entitled to relief under subsections (5), (6), or (7), which need be filed only within a reasonable time, rather than under subsection (1), which must be filed within three months after the judgment.

## STIPULATION

We first consider whether the court clearly erred in finding that the parties'

---

**1.** At the original proceeding, the court heard the parties read the stipulation into the record and discuss some of its terms. The court later entered an order enforcing its terms. While the court never explicitly made a finding as to the validity of the stipulation, that finding was implicit in the judgment. Further, in the second hearing, the court had occasion to recall the events of the first hearing and to make an explicit finding that there had been a stipulation:

> The time sequence as I understand this, is this matter was heard on December 21, 1987. There was an oral stipulation in court. If my memory is accurate there was approximately 2 hours spent with counsel and their clients outside of the courtroom attempting to arrive at an agreement between the parties subsequent to the plaintiff having put on their evidence. They returned to court and Mr. Brown articulated the stipulation.... Mr. Chipman ... there were, as I recall, some questions as they went along concerning just what they believed the agreement to be, by Mr. Wootton. I asked you whether or not you understood the stipulation or agreed with it and you replied "What stipulation?" At which time I would have asked further ques-

stipulation was valid. We will set aside a finding only if it is clearly erroneous. Utah R.Civ.P. 52(a); *Hoth v. White*, 799 P.2d 213, 216 (Utah App.1990).

The stipulation was entered after the court had heard Richins's case in chief. The court heard the parties discuss the proposed stipulation and read it into the record. The court questioned both counsel and the parties to ascertain whether they understood it. The court then found that the stipulation was a fair and accurate representation of the parties' agreement, and entered its order pursuant to the stipulation.

When Chipman brought his motion to set aside the judgment, the same judge had another opportunity to review whether the parties had in fact entered into a valid stipulation. This time, the court recalled the circumstances leading up to the stipulation, the discussions held in court, and the demeanor of the parties involved. In addition, the record contained the written stipulation, which was signed by all counsel. Based on these factors, the court found that Chipman had understood the stipulation sufficiently, and that he had agreed to it. The trial court's independent recollec-

---

tions had not Mr. Wootton immediately turned to you and made other statements regarding the stipulation and your understanding of it, such as, well you talked about this in the hall or whatever has actually said. Then I think you replied something "Well I don't quite understand it at all but I guess it is all right." Then Mr. Wootton, I think, turned to Dr. [Osguthorpe] and indicated that he was a friend of yours who had been present. He was your confidant, that you often followed his advice, and asked the doctor whether or not he felt he believed the stipulation was fair and reasonable. As I recall he replied, "Yes." I am not looking at the transcript but that is my memory of it. *On that basis the court concluded that there was in fact a stipulation.* That was on December 21, 1987. On January 6, 1988, there was filed in court a stipulation for settlement and judgment. This was a written stipulation signed by all counsel.... Subsequent thereto, there was a judgment prepared and sent in which the attorneys for all signed. The judgment was approved as to form, and the court, based upon those signatures, simply signed that judgment and placed it of record.

(Emphasis added.)

tion of the original proceedings, combined with the evidence in the record, support our conclusion that the trial judge, who had two opportunities to consider the issue, did not clearly err in finding that Chipman entered into the stipulation. Further, we note that "[t]here is an institutional hesitancy to relieve a party from a stipulation negotiated and entered into with the advice of counsel." *Birch v. Birch*, 771 P.2d 1114, 1116 (Utah App.1989).

## RULE 60(b)

Chipman next argues that the trial court erred in determining that it lacked jurisdiction to consider his motion to set aside because the motion was untimely filed under Utah R.Civ.P. 60(b)(1). This argument raises two issues: (1) whether the trial court correctly characterized Chipman's motion, filed fifteen months after judgment was entered, as a Rule 60(b)(1) motion rather than a Rule 60(b)(5), (6), or (7) motion; and, (2) assuming the trial court's characterization of the motion was correct, whether the court abused its discretion in dismissing the motion.

Rule 60(b) of the Utah Rules of Civil Procedure provides for relief from a final judgment:

> On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (5) the judgment is void; (6) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (7) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and for reason[ ] (1) ... not more than 3 months after the judgment, order, or proceeding was entered or taken.

The trial court's determination that Chipman's motion was a Rule 60(b)(1) motion rather than a Rule 60(b)(5), (6), or (7) mo-

tion constitutes a conclusion of law. "We accord conclusions of law no particular deference, but review them for correctness." *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

Given that Chipman filed his motion more than fifteen months after the judgment was entered, it is understandable that he should prefer to characterize it as a Rule 60(b)(5), (6), or (7) motion rather than a Rule 60(b)(1) motion.

### *Rule 60(b)(5).*

■ Chipman argues that Rule 60(b)(5), which governs void judgments, applies because the fact that the stipulation was void renders the judgment void. This argument confuses void judgments with voidable judgments: "[A] judgment is not void merely because it is erroneous or because some irregularity inhered in its rendition. It is void *only* if the court that rendered it lacked jurisdiction of the subject matter or of the parties or if the court acted in a manner inconsistent with due process." *Automatic Feeder Co. v. Tobey*, 221 Kan. 17, 558 P.2d 101, 104 (1976) (emphasis added). Nothing in the record indicates that the court lacked jurisdiction over the subject matter or over the parties or was otherwise incompetent to render judgment. The court therefore correctly concluded that Chipman was not entitled to relief under Rule 60(b)(5).

### *Rule 60(b)(6).*

■ Chipman argues that Rule 60(b)(6), which permits relief when prospective application of the judgment is inequitable, is applicable to his case. The third clause of subsection (6) is most commonly invoked to prospectively terminate injunctions. *See Laub v. South Cent. Utah Tel. Ass'n*, 657 P.2d 1304, 1306 (Utah 1982). The United States Supreme Court held that the federal equivalent of the rule, Fed.R.Civ.P. 60(b)(5), may be used to set aside only those *prospective* features of a decree whose application is *no longer* equitable:

> There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree.

We are asking ourselves whether anything has happened that will justify us now in *changing* a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the *conditions that existed at its making.* We are not at liberty to reverse under the guise of readjusting.

United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) (emphasis added). Thus the analysis is whether the judgment has prospective application and whether subsequent events have occurred making enforcement of the judgment's prospective application no longer equitable. In making the analysis, "[i]t is not enough to become dissatisfied with an agreement. Nor is it enough to have an advancing market demonstrate the unwisdom of the agreement from a financial standpoint." *United States v. 12.381 Acres of Land,* 109 F.Supp. 279, 282 (D.N.M.1953).

Chipman argues that Rule 60(b)(6) applies "[b]ecause the stipulation reaches nine years into the future and the inequity of it came to light after the judgment." In support of his point, he cites *Bros Inc. v. W.E. Grace Mfg. Co.,* 320 F.2d 594, 608–09 (5th Cir.1963) and *Tsakonites v. Transpacific Carriers Corp.,* 322 F.Supp. 722 (S.D.N.Y.1970). Neither case is helpful. *Bros Inc.* analyzes Fed.R.Civ.P. 60(b)(6) (the equivalent to Utah R.Civ.P. 60(b)(7)), which allows for a setting aside for "any other reason justifying relief." *Tsakonites* deals with the first portion of Fed.R.Civ.P. 60(b)(5) where "the judgment ... upon which it is based has been reversed or otherwise vacated." In *Tsakonites,* the court held that the document in question was not really a judgment, and was therefore void as a judgment. *Tsakonites,* 322 F.Supp. at 725.

Here, Chipman argues that the judgment never was equitable and that he did not realize its inequity until later. He does not allege that any subsequent event has rendered the prospective application of the judgment no longer equitable. Rather, he has now become disenchanted with the judgment even though he has relied upon and benefited from its terms for over a year. We find that the court correctly determined that subsection (6) does not apply.

### Rule 60(b)(1) and (7).

■ Chipman argues that Rule 60(b)(7), rather than (1) applies to his case. However, we find that Chipman's claim that he mistakenly entered into an ill-advised stipulation without fully understanding its consequences[2] is correctly characterized as mistake, inadvertence, surprise or neglect under Rule 60(b)(1). *See e.g. Maxwell v. Maxwell,* 796 P.2d 403, 406 (Utah App. 1990); *O'Link v. O'Link,* 632 P.2d 225, 229 (Alaska 1981). Therefore, the trial court

**2.** We find it difficult to accept Chipman's assertions. On the advice of counsel and his friend and confidant, Dr. Osguthorpe, Chipman assented to a stipulation which he now finds distasteful. *See Birch v. Birch,* 771 P.2d 1114, 1117 (Utah App.1989). His arguments represent little more than a case of buyer's remorse. Chipman argues that his assent to the stipulation was not effective because it was equivocal. However, the record indicates that he accepted payments under the stipulation and performed pursuant to its terms for over a year. Thus, any claimed uncertainty as to his assent was removed by his ratification of the agreement.

Chipman also asserts that his counsel did not function adequately because he was impaired. The same analysis we used above to determine whether the court erred in deciding whether Chipman entered into a valid stipulation is applicable in determining whether Chipman's counsel was impaired. We need not go into detail, but only summarize the points already made: In the first proceeding, the judge heard Richins's case in chief, he heard the parties discuss the proposed stipulation and read it into the record, and he questioned both counsel and the parties. In the second hearing, when Chipman brought his motion to set aside the judgment, the same judge recalled the circumstances leading up to the stipulation, the discussions held in court, and the demeanor of the parties involved. The trial judge, after having had ample opportunity to view the litigants and the counsel, correctly concluded that the stipulation was valid. Implicit in that conclusion was a determination that nothing unusual or exceptional had occurred to upset the proceedings.

Further, our review of the record shows nothing unusual or exceptional occurred sufficient to persuade us to set aside the judgment. We further note that ineffective assistance of counsel is a sixth Amendment right limited to criminal law.

was correct in concluding that any relief sought under Rule 60(b) would have to be pursuant to subsection (1).

Subsection (7), the residuary clause of Rule 60(b), allows for relief from judgment for "any other reason justifying relief from the operation of the judgment." Relief under this subsection embodies three requirements: "First that the reason be one *other* than those listed in subdivisions (1) through (6); second, that the reason justify relief; and third, that the motion be made within a reasonable time." *Laub v. South Cent. Utah Tel. Ass'n*, 657 P.2d 1304, 1306–07 (Utah 1982). Also, subsection (7) "should be very cautiously and sparingly invoked by the Court only in unusual and exceptional instances." *Id.* at 1307–08 (quoting *Hughes v. Sanders*, 287 F.Supp. 332, 334 (E.D.Okla.1968)). However, Rule 60(b)(7) is not available to one who should have filed under Rule 60(b)(1) but did not. *See Russell v. Martell*, 681 P.2d 1193, 1195 (Utah 1984); *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 926 (Utah 1982).

We find that because subsection (1) applies, subdivision (7) cannot apply and may not be used to circumvent the three-month filing period. *Laub*, 657 P.2d at 1308.

■ Since Chipman's motion was correctly characterized as a Rule 60(b)(1) motion, we next review the trial court's decision to dismiss the motion. We will not interfere with the trial court's broad discretion to rule on a 60(b) motion absent a showing of abuse of that discretion. *Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986); *Birch*, 771 P.2d at 1117.

■ In order for a party to be relieved from judgment under Rule 60(b)(1), the party must demonstrate not only that the judgment resulted from mistake, inadvertence, surprise, or excusable neglect, but also that the motion to set aside was timely, and that there exist issues worthy of adjudication. *Cf. State By & Through Utah State Dep't of Social Servs. v. Musselman*, 667 P.2d 1053, 1055–56 (Utah 1983). In this case, Chipman filed his motion more than fifteen months after the entry of judgment, well outside the three-month time period provided by Rule 60(b)(1). Because Chipman's motion was not timely filed under Rule 60(b)(1), the trial court's dismissal of the motion was not an abuse of discretion. Indeed, the court lacked jurisdiction to consider the merits of the motion and would have erred had it done so.

Chipman argues for the first time on appeal that the trial court had jurisdiction to grant his motion under Rule 60(a) or under its "inherent authority." We decline to consider these arguments because Chipman raises them for the first time on appeal. *Katz*, 732 P.2d at 95.

The judgment of the trial court is affirmed.

JACKSON and ORME, JJ., concur.